865 A.2d 741 (2005)
374 N.J. Super. 523
Barbara MALDONADO, Individually and as Guardian of the Minor Jose Concepcion, Jr., Plaintiff-Appellant,
v.
T'Chad LEEDS,[1] Church of Jesus Christ LDS, City of Paterson, Corporation of Presiding Bishop of The Church of Jesus Christ of Latter-Day Saints, New Jersey Morristown Mission of The Church of Jesus Christ of Latter-Day Saints, Corporation of The President of The Church of Jesus Christ of Latter-Day Saints, City of Paterson Police Department, and Fire Department of City of Paterson, Defendants, and
Church of Jesus Christ LDS, Defendant/Third-Party Plaintiff,
v.
City of Paterson, Defendant/Third-Party Defendant, and
City of Paterson Police Department, Third-Party Defendant.
Superior Court of New Jersey, Appellate Division.
Submitted November 15, 2004.
Decided February 3, 2005.
*743 Mark Mulick, Montclair, attorney for appellant.
Defendants did not respond.
Before Judges PETRELLA, LINTNER and PARKER.
The opinion of the court was delivered by
PARKER, J.A.D.
On leave granted, plaintiff Barbara Maldonado appeals from a grant of partial summary judgment dismissing her claims for negligent and intentional infliction of emotional distress. Plaintiff's claim arose out of an accident on July 5, 1999, in which her seven-year-old son was hit by an automobile driven by defendant T'Chad Leeds and owned by the Church of Jesus Christ of Latter-Day Saints. The child was dragged and severely injured. Plaintiff witnessed the accident and has been diagnosed with post-traumatic stress and panic disorders.
In his oral decision on the motion, the trial judge found "as a matter of law" that the emotional distress claims should be dismissed because (1) plaintiff did not seek a medical evaluation or treatment until four years after the accident; (2) plaintiff's cause of action accrued on the day of the accident and the statute of limitations had run; and (3) plaintiff had made no distinction between negligent and intentional infliction of emotional distress.
In this appeal, plaintiff argues that the trial court erred in (1) finding that plaintiff did not incur severe emotional distress as a result of the accident; and (2) finding that the statute of limitations barred plaintiff's claims for negligent and intentional infliction of emotional distress. We reverse and remand.
*744 On July 3, 2001, plaintiff, as guardian ad litem for the minor child, filed the initial complaint asserting claims on behalf of the child. On February 11, 2002, plaintiff filed an amended complaint, adding herself as an individual plaintiff and her claims for negligent and/or intentional infliction of emotional distress.
By December 2003, plaintiff and her son were both diagnosed as suffering from chronic post-traumatic stress disorder by Dr. Grigory Rasin. Plaintiff was also diagnosed with panic disorder. According to Dr. Rasin, plaintiff has continuing nightmares, "obsessive recollection of the accident" and was "in constant fear for the safety of her children." She exhibits "exaggerated startle responses" and three to four times a day she experiences "episodes of shakiness, development of paresthesias, shortness of breath and palpitations and feelings of fear." In addition, plaintiff attested to her "extreme anxiety," loss of appetite and weight loss. Although her symptoms are "incapacitating," Dr. Rasin noted that plaintiff has a "significant tendency to minimize problems." Notwithstanding Dr. Rasin's report, the trial judge dismissed plaintiff's claims for emotional distress.
We have carefully considered the entire record before us, and we are satisfied that the trial judge erred in finding "as a matter of law" that plaintiff's symptoms did not meet the standard for emotional distress.
In Portee v. Jaffee, 84 N.J. 88, 417 A.2d 521 (1980), the Court held that a mother who watched her seven-year-old son suffer and die when he became trapped in an elevator shaft could recover for a negligent infliction of emotional distress. The court thereby established that a "bystander" has an independent cause of action for emotional distress. A plaintiff alleging a Portee claim must demonstrate:
(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional stress.
[Id. at 101, 417 A.2d 521.]
"To be compensable, emotional distress must be `sufficiently substantial to result in physical illness or serious psychological sequelae.'" Trisuzzi v. Tabatchnik, 285 N.J.Super. 15, 27, 666 A.2d 543 (App.Div.1995) (quoting Eyrich v. Dam, 193 N.J.Super. 244, 253, 473 A.2d 539 (App.Div.), certif. denied, 97 N.J. 583, 483 A.2d 127 (1984)). Liability will be imposed only if the injury is "sufficiently palpable, severe, or enduring." Decker v. Princeton Packet, Inc., 116 N.J. 418, 431, 561 A.2d 1122 (1989). Mere aggravation, embarrassment, an unspecified number of headaches, loss of sleep, and lack of interference with the every day routine do not, as a matter of law, constitute severe emotional distress. Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 368-69, 544 A.2d 857 (1988). Evaluation of emotional distress claims raises questions of law and fact involving both judge and jury. Id. at 367, 544 A.2d 857. "The court decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved." Ibid."Severe emotional distress means any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so, including ... post[-]traumatic stress disorder." Taylor v. Metzger, 152 N.J. 490, 515, 706 A.2d 685 (1998) (quoting Poole v. Copland, Inc., 125 N.C.App. 235, 481 S.E.2d 88, 93 (1997)). Post-traumatic stress, therefore, qualifies as emotional distress for purposes of a *745 Portee claim. The jury is free to accept or reject the claim after reviewing the evidence. Ibid.; Hill v. Dep't of Corr. Comm'r, 342 N.J.Super. 273, 297-98, 776 A.2d 828 (App.Div.2001), certif. denied, 171 N.J. 338, 793 A.2d 717 (2002).
The trial judge dismissed plaintiff's emotional distress because she had not sought treatment for several years after the accident. The judge noted that "[plaintiff] says, "[I]t's because she did not have insurance and she could not, therefore, seek medical or psychological help for her emotional distress." Taking judicial notice of the fact that there are clinics that provide psychological help, the judge dismissed the claim.
We disagree with the trial judge's assessment. "[I]n order to evaluate fairly whether plaintiff's emotional distress was idiosyncratic, the average person must be one similarly situated to the plaintiff." Taylor, supra, 152 N.J. at 516, 706 A.2d 685. Here, we have a mother who witnessed her seven-year-old child hit by the vehicle, become impaled on the muffler and dragged under the vehicle while she was running after it and banging on it to stop. Even after the vehicle stopped, the child was pinned under it until it could be lifted and the child removed. Obviously, the child's severe injuries diverted and preoccupied this mother, such that she was unlikely to attend to her own distress. Moreover, there is nothing in the record to indicate that plaintiff knew of the availability of the free clinics or that she could have utilized those services given the severity of the child's injuries and her need to attend to him. Dr. Rasin's diagnosis supports plaintiff's claim that she is suffering severe emotional distress in the form of post-traumatic stress and panic disorders. In our view, a jury may reasonably find that plaintiff did, in fact, suffer "serious psychological sequelae," Trisuzzi, supra, 285 N.J.Super. at 27, 666 A.2d 543, and that her emotional distress is "palpable, severe, or enduring" as a result of witnessing her son's accident. Decker, supra, 116 N.J. at 431, 561 A.2d 1122. Under the circumstances presented, plaintiff's claims for emotional distress cannot be dismissed "as a matter of law."
With respect to the statute of limitations, we are persuaded that a Lopez[2] hearing is mandated to determine when plaintiff discovered that she suffered a compensable injury. N.J.S.A. 2A:14-2 requires that a personal injury claim be brought within two years of the accrual of the cause of action. The discovery rule, however, has been adopted to prevent harsh results from a mechanical application of the statute of limitations. The discovery rule provides that:
in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim.
[Lopez, supra, 62 N.J. at 272, 300 A.2d 563.]
The rationale underlying the discovery rule is that "an injured person, unaware that he has a cause of action, should [not] be denied his day in court solely because of his ignorance, if he is otherwise blameless." Id. at 274, 300 A.2d 563. The discovery rule may be applicable when "injured parties reasonably are unaware that they have been injured, or, although aware of an injury, do not know that the injury is attributable to the fault of another." Baird v. Am. Med. Optics, 155 N.J. 54, 66, 713 A.2d 1019 (1998).
*746 To determine whether the discovery rule applies, a plenary hearing is necessary "since credibility is usually at issue." J.L. v. J.F., 317 N.J.Super. 418, 429, 722 A.2d 558 (App.Div.), certif. denied, 158 N.J. 685, 731 A.2d 45 (1999); Lopez, supra, 62 N.J. at 275, 300 A.2d 563. The standard for application of the discovery rule is objective: whether the plaintiff "knew or should have known of sufficient facts to start the statute of limitations running." Baird, supra, 155 N.J. at 72, 713 A.2d 1019. A litigant will not generally succeed by claiming illiteracy or lack of education. Martinez v. Cooper Hosp.-Univ. Med. Ctr., 163 N.J. 45, 55, 747 A.2d 266 (2000). A litigant should not be penalized, however, for financial inability to seek a medical diagnosis and treatment in order to establish a Portee claim.
At a Lopez hearing, the equitable claims of opposing parties "must be identified, evaluated and weighed" and all relevant facts and circumstances must be considered. Lopez, supra, 62 N.J. at 274, 276, 300 A.2d 563. The determinative factors may include, but are not limited to,
the nature of the alleged injury, the availability of witnesses and written evidence, the length of time that has elapsed since the alleged wrongdoing, whether the delay has been to any extent deliberate or intentional, [and] whether the delay may be said to have peculiarly or unusually prejudiced the defendant.
[Id. at 276, 300 A.2d 563.]
The trial judge's determination that plaintiff's emotional distress claims accrued on the date of the accident was erroneous under the circumstances.[3] The accrual date can only be determined after a plenary hearing at which all of the Lopez factors must be taken into consideration, including plaintiff's testimony as to when she became aware that she had a compensable injury. Baird, supra, 155 N.J. at 66, 713 A.2d 1019.
Finally, the trial judge indicated that he was not going to determine whether plaintiff's claims amounted to intentional or negligent infliction of emotional stress. His comment, "Maybe the Appellate Division is going to handle this thing, and maybe they'll deal with it" was unnecessary and gratuitous. Judges are not expected to make determinations as to whether a claim is negligent or intentional. Plaintiff must elect to proceed on one or both claims after discovery. Of course, she must present evidence and carry her burden of proof with respect to either the negligent or intentional claims.
To summarize our decision, we hold that under the circumstances presented, the trial judge cannot make a determination "as a matter of law" that plaintiff's emotional distress claims do not satisfy the Portee standard. We further hold that under the circumstances presented, a Lopez hearing is required to determine when the statute of limitations on the emotional distress claims accrued.
Reversed and remanded.
NOTES
[1] The complaint incorrectly designated Echad Leeds as a defendant.
[2] Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973).
[3] Some authorities, including the National Institutes of Health and the PTSD Alliance Resource Center, indicate that symptoms of post-traumatic stress disorder may not develop until months or even years after the traumatic event. http:// www.nlm.nih.gov/medlineplus/ency/article/000925.htm; http:// www.ptsdalliance.org.